## JOYCE *vs.* POYDRAS DE LA LANDE.

APPEAL FROM THE COURT OF THE FOURTH DISTRICT.

If a mortgage exists on property in the hands of a third possessor, the property can be legally sold under it only by pursuing the hypothecary action.

The sale of property by order of the Court of Probates, extinguishes all mortgages created by the deceased.

*It seems* that the article 2290 of the *Louisiana Code*, applies to cases in which the possessor was from the first a wrong doer and an usurper, acting with a knowledge of his want of faith. It cannot be said that the purchaser at the marshal's sale participated with the latter in the original trespass, by seizing and selling property without authority.

The possessor who was originally in good faith, is not liable for the destruction of the thing without his fraud or fault.

Such a possessor is responsible for the fruits and revenues of the thing from the time he received it until the time of its destruction

JOYCE
*vs.*
POYDRAS DE LA
LANDE.

William Joyce, in February, 1823, purchased at the probate sale of the succession of Jeanne Delaterre, ordered by the parish judge of the parish of West Baton-Rouge, a negro man slave named Cudjo or Codio, for five hundred and twenty dollars. It is alleged that he possessed the slave until the month of January, 1829, when the slave came into the possession of Benjamin Poydras de la Lande, who has illegally held him in possession ever since, and now sets up claim and title to the same. The plaintiff claims damages for the detention of the slave, to the amount of one hundred dollars per year, since he came into the possession of the defendant.

The defendant denies that the plaintiff was *bona fide* the owner of the negro at the inception of the present suit. He avers that he is the lawful and *bona fide* owner and possessor of the negro, having bought the same on the 26th day of January, 1829, for the sum of two hundred and five dollars, at the public sale made on that day by the deputy marshal of the United States' Court for the Eastern District of Louisiana, by virtue of a writ of *fieri facias*, issued from that court, at the suit of the *Heirs of Durand* vs. *the Heirs of Delaterre*, that ever since he has peaceably and *bona fide* possessed the said negro. ` He further avers, that the said negro has been seized in the possession of Mr. A. Leblanc, by the deputy marshal aforesaid, in due course of law, as alleged by the plaintiff himself, before this court, in a suit, wherein he was the plaintiff, and the heirs of Delaterre were the defendants, for the same cause of action; and that the plaintiff suffered the said negro to be advertised for sale and sold, without in any manner opposing the sale, and thereby suffered the public to remain ignorant of any claim which the plaintiff might have upon said negro.

He further alleges, that he having bought the said negro, and all the rights which the heirs of Delaterre had on the 21st day of November, 1828, or at any time since, in the afore-

said Cudjo, and a final judgment having been rendered in favor of the heirs of Delaterre against the plaintiffs for the same cause of action, this forms *res judicata* with reference to the present suit. He denies that he is bound to pay any rent or profit for the services of said negro, because he bought and possessed him in good faith, and with a just title, and was not put in *morâ*.

EASTERN DIS.
March, 1834.

JOYCE
vs.
POYDRAS DE LA
LANDE.

In reply to an interrogatory propounded to him by the defendant, the plaintiff stated that he had considered himself as the *bona fide* owner of the slave. from the day of the adjudication at the probate sale: and that he had paid the price at which the slave was then adjudicated to him.

It was proved that the slave in dispute had died of cholera, after the institution of the suit, and before the trial.

Judgment was rendered against the plaintiff, and he appealed.

*Cooley*, for plaintiff and appellant, relied on the following points and authorities:

The proprietor has the right of claiming his property in whatever hands he may find it. *Toullier, vol.* 11, *p.* 27, *No.* 19. *Domat. Des Quasi-contracts, lib.* 2, *tit.* 7, *sec.* 1, *art.* 8.

Where the title emanates from the same source, it is sufficient for the plaintiff to prove title and possession, anterior to that of the defendant. *Pothier, de la Propriété, part* 2, *ch.* 1, *art.* 3, *No.* 326.

The plaintiff's title is proved by his answer on oath to the defendant's interrogatory, unless the contrary is proved, &c. *Code of Practice,* 354.

The defendant is in bad faith from judicial demand, and must pay for the hire of the slave, at least from that time; and in case of death, must pay his value. *Louisiana Code, art.* 493, 494 *and* 495. The old Code had changed the rule, and *Packwood* vs. *Richardson*, was decided on that Code; but the *Louisiana Code*, has restored the old rule, which is clear. See *Dig. lib.* 5, *l.* 25, *sec.* 7. " *Non tantum litis contestatio, sed et sola petitio, facit malæ fidei possessorum.*" *De hereditatis*

EASTERN DIS. *petitioni. Febrero, part* 1, *ch.* 7, *sec.* 2, *No.* 85. *Partidas, part*
March, 1834.
3, *tit.* 28, *l.* 39. *Domat, lib.* 3. *tit.* 5, *sec.* 3 *and* 17. *Pothier,*
*de la Propriété. No.* 340, *it sequitur.*

JOYCE
*vs.*
POYDRAS DE LA
LANDE.

There is no evidence before the court that there ever was a mortgage on the slave Cudjo, except that offered by plaintiff himself; which shows that it was only inscribed in the parish of West Baton-Rouge, where the slave was located, in May, 1828, about five years *after* he was bought by the plaintiff.

The defendant's own testimony, shows that the slave was in the hands of plaintiff, a third possessor, when seized, and the hypothecary action was not pursued as required by law in such a case; neither does the judgment decree any privilege, or make mention of any mortgage as existing on the slave; and the execution issued on that judgment, only directs the marshall to seize and sell "real estate and slaves of the said defendants (the heirs of Delaterre) in your district, whereof they are owners on the 1st day of March, 1828, last past," at which time they had no pretence of title to Cudjo, for the plaintiff had bought him *of* them in 1821. The seizure was, therefore, perfectly illegal and irregular. If there was any mortgage on the slave, it was extinguished by the sale, by order of the Court of Probates of West Baton-Rouge. The petition of plaintiff in suit No. 756, which was admitted in evidence, does not contain a judicial confession, that the slave was seized *and sold* in due course of law; it only goes so far as to state that the slave was *seized* in due course of law. the words are, "That in execution of said judgment, as the law directs, the said negro Cudjo was *seized* upon by the United States' marshal by his deputy, *and so taken out of the possession of your petitioner in due course of law*; and was sold subsequently, sold, &c. The words, "in due course of law," do not refer to the sale, but only to the seizure and the taking out of the possession of the plaintiff. Even then admitting the seizure to have been legal, was the sale so likewise ? It was not. By the rules of proceedings anterior to the *Code of Practice*, and which were adopted for the Federal Court, by act of Congress, in 1824, a sheriff's

EASTERN DIS.
*March*, 1834.

JOYCE
*vs.*
POYDRAS DE LA
LANDE.

sale was not legal without a deed, and that deed in a certain form, &c. See 2d *Moreau's Digest*, p. 333. *Martin's Reports* vol. 11, *p.* 706. and 2d *Louisiana Reports*, 476. *Bradbury et als. vs. Morgan et als.*; and in this case nothing like such a deed is produced.

The district judge erred in admitting the plaintiff's petition in suit, No. 757, as containing a judicial confession; because a judicial confession can only be made by the party himself, or by one *specially* authorised by him to that effect. *La. Code, art.* 2270, *Martin's Reports, N. S. 5th vol.* 309. The allegations therein relied upon, were negatived by the judgment of the court in that case; and they are formally contradicted on oath, by the plaintiff himself, in this very case. The said petition should not have been admitted in evidence, as containing a judicial confession, because it was not offered by defendant's counsel for that purpose, but only in support of the plea of *resjudicata.*

The judgment under which it is pretended the execution issued, under which the slave was seized, should not have been admitted in evidence; because on the face of it, it appears that it was confirmed on a default, and it does not appear that three judicial days occurred between the judgment by default and the final judgment.

The return on the execution by the marshal, no where shows that the slave was sold; the only part of which comes near it, is in these words, which is no mistake in the transcript, for it was noticed and collated with the document offered in evidence. " *Re-advertised the slaves Cudjo and Esther for sale, and after due notice, they were exposed to public sale on the 26th January*, 1824, *for twelve months credit, for three hundred and forty-five dollars. Returned into court, James Nicholson, deputy marshal.*" Which says nothing more than that the slaves were *exposed for sale.*

The defendant's title, which is one resulting from a forced alienation, must be strictly regular in every point, and if it cannot show a valid judgment, and proceedings under it authorized by law, and that the slave was duly advertised, and that the slave was regularly sold, and a deed given as

36

Eastern Dis. required by law, the defendant must be condemned to a y
 March, 1834. the value of the slave and hire, to the plaintiff, who has
 JOYCE proved his title completely to the said slave. *Duforn* vs.
 POYDRASDE LA *Compana, Martin's Rep., vol.* 11, *p.* 706.
 LANDE.

*Cuvilier*, for defendant and appellee, moved to dismiss the appeal, because,

1. That said plaintiff, though he expresses *his wish* to appeal, does not at all *pray for* an appeal. Therefore, the order of the judge *a quo* granted *more* than was *asked* from him.

2. Said plaintiff does not allege in his said petition, that it *is aggrieved* by the judgment alluded to in said petition.

BULLARD, J., delivered the opinion of the court.

This is a suit to recover a slave in possession of the defendant. The plaintiff prays that he may be condemned to surrender him, or in default thereof, within a reasonable time to be paid his value; and for his services, at the rate of one hundred dollars per annum.

The plaintiff shows that he purchased him at a probate sale of the estate of the widow Durand, in 1823, and remained in possession several years, when he was taken out of his possession by the marshal of the United States, for the district of Louisiana. The defendant sets up title under a sale by the marshal, under an execution sued out of the District Court of the United States, to satisfy a judgment recovered by the heirs of Durand, against the representatives of the widow Durand. He exhibits a mortgage given on the slave by the widow Durand in her life time, in favor of the heirs of her deceased husband. No deed by the marshal is exhibited.

The plaintiff contends that a sheriff's deed, is the only legal evidence of a forced sale. That the defendant cannot make out any title, by exhibiting merely the marshal's return. On the other side, it is contended that in a suit by the present plaintiff against his vendors in warranty, he had stated in his

petition, that the slave in question had been taken by the marshal, and in due course of law sold; that this judicial avowal precludes the plaintiff in the present suit. Taking the confession in its utmost latitude, and it amounts to nothing more than a declaration that the marshal, to satisfy a- judgment, not against him but to which he was a stranger, which was as to him, *res inter alios acta*, his property had been seized and sold. It is not easy to perceive how either the act of the marshal, or the admission of the plaintiff, could divest the plaintiff of his title. The judgment was not against him, nor was the marshal authorised to seize his property. If the marshal's deed went in evidence, what would it prove? It might serve the defendant as a title on which he might perhaps base a plea of prescription, but surely it would not show the consent of the plaintiff to the sale. Nor does his confession show it; it simply shows a fact which he thought at the time amounted to an eviction, and opened his recourse in warranty.

But it is said that the slave was sold to satisfy an outstanding mortgage, in favor of the heirs of Durand. It is a sufficient answer to this, first, that if the mortgage existed, Joyce was a third possessor, and the property could not legally be sold, without pursuing the hypothecary action; and, secondly, that in point of fact, the mortgage had been extinguished by the sale, in pursuance of a judgment of the Court of Probates. It has been settled by this court, that all mortgages created by the deceased, are extinguished by a probate sale of the mortgaged property.

*If a mortgage exists on property in the hands of a third possessor, the property can be legally sold under it, only by pursuing the hypothecary action.*

*The sale of property by order of the Court of Probates, extinguishes all mortgages created by the deceased.*

Under this view of the case, we should be of opinion that the plaintiff would have been entitled to recover; but, *pendente lite*, the slave died of the cholera, and the case presents itself in another, and rather novel aspect. The plaintiff contends that he is entitled to recover the value of the slave, and of his services after the inception of the suit, inasmuch as the defendant was in bad faith. He relies as to the value of the slave, on the 229th article of the *Louisiana Code*: "If the thing duly received is an immovable property, or a corporeal movable, he who has received it is bound to restore in kind

EASTERN DIS.
*March,* 1834

JOYCE
*vs.*
POYDRAS DE LA
LANDE.

*It seems* that the article 2290 of the *Louisiana Code,* applies to cases in which the possessor was from the first a wrong doer and an usurper, acting with a knowledge of his want of faith. It cannot be said that the purchaser at the marshal's sale, participated with the latter in the original trespass by seizing and selling property without authority.

if it remain, or its value if it be destroyed or injured by hi fault; he is even answerable for its loss *by fortuitous events, if he received it in bad faith.*"

This article seems to us to apply to cases in which the possessor was from the first a wrong doer and an usurper, acting with a knowledge of his want of right. It cannot be said that the defendant participated in the original trespass. He received the property from the marshal, and there is no evidence that he knew of the title of the plaintiff, before this suit was brought.

As our *Code* does not seem to have provided expressly for a case of this kind, we are compelled to resort to first principles, to natural law and reason. The safest interpretation of natural law, and the best aids of our reason, are those profound thinkers whose works have come down to us, and whose spirit breathes throughout our civil jurisprudence; and although the ancient civil laws have no longer in our tribunals the sanction of legislative authority, we cannot shut our eyes to the light they shed along our path, while following the imperfect clue of a written *Code.*

The text of the *Roman Digest,* to which we are referred by the plaintiff's counsel, establishes the general principle, that after the *contestatio litis,* all persons, although originally *bona fide,* become persons in bad faith. The reason given by Ulpian, is, "*Coepit enim scire rem ad se non pertinentem possidere se is qui interpellatur.*" This law relates to a suit for an entire succession, and the edict of the Emperor Adrian, here commented upon, seems to have laid down this principle, that after judgment in his favor, the plaintiff ought to obtain all which he would have been entitled to, if the succession had been surrendered to him at the moment suit was instituted. In commenting on this edict, in law 40, of the same book, Paulus thinks the application of the rule would be too severe. For, says he, how would it be if after the *litis contestatio,* some slaves had died, or animals had perished? According to the discourse of the Emperor, the possessor would be responsible for their value, since the plaintiff, having found them in the succession, might have

sold them if the estate had been given up at once on his
demand. Proculus thinks this would be just as relates to effects or objects *specifically demanded*, but Cassius thinks
otherwise. In my opinion, continues Paulus, Proculus is
right as relates to a possessor in bad faith, and the opinion of Cassius, in relation to a possessor in good faith, is equally well founded; for a possessor in good faith ought not to be responsible for their mortality, nor abandon the defence of his rights through the fear of such an accident. Paulus again, *l.* 27, *t.* 1, *De rei vindicatione*, which is the case before the court, says, "*Quod si litis contestationis tempore possedit cum autem res judicatur sine dolo malo amisit possessionem, absolvendus est possessor.*" 3 *Pothier's Pendats, p.* 715.

The learned Gregorio Lopez, in commenting on the sixth law, title fourteen of the sixth Partida, which establishes the general principle, in relation to suits for an entire succession, that the possessor in bad faith is responsable for the destruction of the effects, after the *contestatio litis* though not before, but that the possessor in good faith never is; says, that although after the *contestatio litis* all possessors stand on the same footing, all equally trespassers, yet this principle relates only to fruits recovered or to be received, but that it is otherwise as to the destruction of the thing, for in that case there is a difference between a possessor in bad faith *veré et à principio*, and one who becomes so *ficté* or by fiction of law, after the *contestatio litis*, that he who was originally in good faith, is not liable for the destruction of the thing *without his fraud or fault*. This seems to us a sensible and reasonable distinction. A possessor when informed by suit, of a better title, may have just reasons for defending his title, with a view to his recourse in warranty. It is a right which he is not bound to abandon at the first notice. We are, therefore, of opinion, that the defendant is not liable for the value of the slave.

The remaining question is, whether the defendant ought to be condemned to pay for the services of the slave, after the institution of the suit, and until he died? We assume as a principle, that the slave still belonged to the plaintiff,

though possessed by the defendant. If it had been a female slave, and she had given birth to a child, after the *contestatio litis*, the child would, in our opinion, have belonged to the plaintiff. The defendant had profited by the labor of the slave in dispute, up to the time of his death. On this point we have the express authority of the Roman Digest. *Utique autem, etiam mortuo homine, necessaria est sententia propter fractus et partus et stipulationem de evictione.* Same title *l.* 16, and *Gaius* again in law 20, " *nec enim sufficit, corpus ipsum restitui; sed opus est, quod habiturus foret, si eo tempore quo judicium accipiebatur restitutus illi homo fuisset.*"

These authorities, which are in fact but deductions from acknowledged axioms of law, and particularly that which forbids one man to enrich himself at the expense of another, seems to us fully to authorise the court to decree, that the defendant shall pay the value of the services of the slave, from the time this suit was brought until his death. The evidence shows that he lived about six months after the inception of the suit, and that his services were worth about seventy-five dollars per annum.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed, and that the plaintiff recover of the defendant, the sum of thirty-five dollars with costs of both courts.