The principal question presented is whether an executrix in a succession proceeding may, if properly authorized, sell at private sale real estate belonging to the decedent and refer to the proceeds of the sale the duly recorded judicial general mortgage bearing on the property in favor of the State of Louisiana and resulting from a judgment previously obtained by the State against the decedent. Edward A. Rolland died on May 12, 1935, in the U.S. Veterans Hospital in Biloxi, Miss. He was domiciled in New Orleans. His succession proceedings were commenced in the Parish of Orleans, and in due course Mrs. Bertha Hale, divorced wife of Manley Poff, was appointed Dative Testamentary Executrix. An inventory was taken and it appeared that the decedent was owner of certain real estate described as follows:
"1. Five certain lots of ground, together with all the rights, ways, privileges and appurtenances thereunto belonging or in anywise appertaining, lying in the City of New Orleans, more particularly described as parts of Lots 25-26-27-28-29 in Square No. 322 on the Map of the New Orleans Land Co. land, the same in size and location *Page 548 
to be in accordance with said map or plan on file in the Office of the City Engineer, City of New Orleans.
"Said parts of Lots 25-26-27-28 and 29 in Square 322 measure Seventy feet front on Polk Street, by One Hundred Twenty-five feet in depth along St. Peter Street towards Germain Street, in Square bounded by St. Anthony Street, Germain, Polk and St. Peter Sts., and forms the corner of Polk and St. Peter Streets.
"Being the same property acquired by the said deceased from New Orleans Land Co., by act before Octave De'Armas, Notary Public, Nov. 5, 1923, Registered C.O.B. 372, Folio 388.
"2. Two certain lots of ground, with all the improvements thereon, and all the rights, ways, privileges and appurtenances thereunto belonging or in anywise appertaining, situated in the Second District of this City, in what is known as the New Orleans Land Co. land, in the Square No. 325, bounded by Germain, Polk, Memphis and St. Louis Streets.
"Said lots are designated by the Nos. 18 and 19 on a plan by S.A. Cologne's Sons, C.E., Apl. 6, 1923. Said lots adjoin each other and measure each twenty-five feet front on Memphis Street, by one hundred twenty-two feet in depth, between equal and parallel lines, and towards St. Louis Street.
"Acquired by the said deceased from Lillian Sherman and Myrtle Sherman, by Act before Joseph Rosenberg, Not. Publ. July 2, 1929, Registered C.O.B. 445, folio 249."
Sometime prior to his death, Rolland, as surety, had executed a release bond in the sum of $500 in a criminal proceeding entitled "State of Louisiana v. John E. Simpson" and in the year 1934 the State, in proper judicial proceedings, had forfeited the said bond, obtained a judgment against Rolland, and had duly inscribed the said judgment in the Mortgage Office of the Parish of Orleans. The Code of Criminal Procedure, in article 108, provides that such a claim of the State shall operate as a judicial mortgage.
Prior to Rolland's death, the real estate had been adjudicated to the State or to the City, or both (the record does not definitely show), for unpaid taxes and for this and other reasons the Executrix advised the Court that it would be to the best interests of the estate that the property be sold at private sale for cash for an amount which had been offered, and the Executrix prayed for authority to so sell the said property. This application was duly published in accordance with the provisions of Act 290 of 1938. There was no opposition and an order was rendered granting the authority requested. However, it was necessary to effect the redemption of the property and there appeared on the mortgage certificate two paving liens in favor of the City of New Orleans, totalling $44.18, with interest, and also the judgment in favor of the State of Louisiana.
Accordingly, the Executrix called upon the City of New Orleans, the State of Louisiana and the Recorder of Mortgages for the Parish of Orleans to show cause why the said recorded claims should not be referred to the proceeds of the sale. From a judgment making this rule absolute and referring the claims of the City and of the State to the said proceeds, the State and the Recorder of Mortgages have appealed. The City did not appeal because its paving claims were paid out of the proceeds at the time the sale was made because of the provisions of Section 3 of Act 116 of 1938 prohibiting any Recorder, Sheriff, Notary Public or any other officer, from passing any act of sale "unless all past due charges for paving * * * are * * * paid * * *."
The State's contention that its claim may not be ordered referred to the proceeds of the sale is based on several grounds:
1st. That the State cannot be made a party defendant against its will and without its consent;
2nd. That the rule in which the Executrix seeks to refer the State to the proceeds of the sale was served on the Attorney General who has "no authority to represent the State for the purpose of receiving such service";
3rd. That the delay of the State in executing its judgment does not, because of laches or for any other reason, prejudice its right;
4th. That the judgment below cancels a judicial mortgage and therefore may compel the State to accept a lesser amount than its full claim; and
5th. That the condition of the estate might have permitted the payment of the State's claim in full out of other assets and without reference to the proceeds of the said sale. *Page 549 
The record shows beyond any possible doubt that there was in the estate no cash with which the debts might have been paid, and that it was necessary to redeem the real estate, if it was not to be lost altogether and if the equity remaining therein was to be preserved to the estate and its creditors.
The paving liens and the taxes were entitled to priority over the judgment on which the State's claim is based, and counsel for the State admit this and do not contend that there was any error in paying the taxes and the paving liens out of the proceeds of the sale ahead of all other creditors. Nor is it contended that the property should not have been sold at private sale or that a better price might have been obtained otherwise. But counsel for the State insist that because of Section 35 of Article III of the Constitution of 1921 there is no right to proceed against the State and to force it to permit its claim to be referred to the proceeds of the sale. That section reads as follows:
"Whenever the Legislature shall authorize suit to be filed against the State, it shall provide a method of procedure and the effect of the judgments which may be rendered therein."
Of course, it must be conceded that, generally speaking, no suit may be brought against the State without its consent and unless it has provided a method of procedure, but we do not think that such a proceeding as this is a suit against the State. This is merely a rule in which it is not sought to take from the State anything of value of which it may be possessed. It is a method by which the orderly administration of the estate is to be permitted to proceed and by which the claim of the State is to be referred from the property against which its judicial mortgage bears to the proceeds of that property, and no attempt is made to deprive the State of any part of its claim. Where a probate sale is properly and regularly conducted, the effect is to clear the property of mortgages, judicial or otherwise, and to refer the holders of those mortgages to the proceeds of the sale, citing Lafon's Ex'rs v. Phillips, 2 Mart., N.S., 225; De Ende v. Moore, 2 Mart., N.S., 336; Joyce v. Poydras de la Lande, 6 La. 277; French v. Prieur, 6 Rob. 299; Lewis v. Labauve, 13 La.Ann. 382.
Much argument is made to the effect that "a state by reason of its sovereign powers is * * * exempt from a plea or defense of laches in the enforcement of its rights." And in support of this principal, which is not in dispute, counsel cite United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283, in which the Supreme Court held that: "* * * The United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights." But no question of laches is here involved. No attempt is made to defeat the claim of the State or to assert that its rights have in any way been lessened by the fact that it did not, prior to Rolland's death, seize the property under the judicial mortgage. It did not do so, and when the Executrix took charge, she made no attempt to sell the property for more than a reasonable time. Therefore, when she attempted to sell it, and did sell it in the succession proceedings, the fact that the State had not itself previously attempted to execute its judgment did not deprive it of any of its rights except that it subjected the property to the costs of sale in the succession proceeding as is always true where mortgaged property is permitted to be sold in the succession proceedings of the decedent.
The contention that the State was not properly cited because it was served through the Attorney General was not made in limine in the court below. Counsel for the State concede that where the State consents to be sued or itself institutes a suit, "* * * subsequent pleadings requiring service of process can thereafter be made upon the Attorney General or any of his associates as the local representatives of the State." But they argue that the service of the initial citation may not be so made. As we have stated, this is not a suit against the State but is merely an attempt to place in its proper legal status a claim which the State has already asserted by recordation, and we see no reason why the legal department, which was responsible for the making of the recordation, should not be cited where it becomes necessary to rank the claim resulting from that recordation. But, as we have said, this contention was not made in limine in the court below. It is contended that even if the proceeding is found to have been properly brought, still the court should not have cancelled entirely the State's mortgage for the reason that should other assets of the estate be later discovered, the *Page 550 
said mortgage should be permitted to bear on and be effective against such newly discovered assets. But the judgment appealed from did not order a cancellation of the mortgage in toto. Its effect is merely to erase it in so far as it may affect the property which is involved, and it is left effective for the time being, at least, against any other property of the estate. When the administration of the estate is finally closed, it will then be proper to determine whether there should be a complete cancellation of the inscription.
The last contention that the condition of the estate might have permitted the payment of the State's judgment in full out of other funds is answered by the fact that, as the record now shows, there were no other funds whatever. The judgment ordering the cancellation of the State's mortgage, in so far as it affects its property, is correct. The State's right is merely referred to the proceeds of the sale and the court below will, no doubt, order the payment to the State, and to other creditors which may be ranked with it, of such balance of those proceeds as may remain after prior charges have been paid.
The judgment appealed from is affirmed.
Affirmed. *Page 550